UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---

CLAUDIA NEWTON and BRANDY
LEANDRO, on behalf of themselves and others
similarly situated,

Plaintiffs,

-against-

R.C. BIGELOW INC. and DOES 1-10,

Defendants.

---

**MEMORANDUM AND ORDER
ADOPTING REPORT AND
RECOMMENDATION**

22-cv-5660 (LDH) (SIL)

LASHANN DEARCY HALL, United States District Judge:

Plaintiffs Claudia Newton and Brandy Leandro ("Plaintiffs") bring this putative class

action against Defendant R.C. Bigelow, Inc. ("Defendant") and ten unnamed defendants for

violations of N.Y. Gen. Bus. Law §§ 349 and 350, breach of express warranty pursuant to N.Y.

U.C.C. § 2-313, common law fraud, and intentional misrepresentation. Plaintiffs moved for

class certification pursuant to Fed. R. Civ. P. 23. On February 14, 2024, Magistrate Judge

Steven Locke issued a Report and Recommendation ("R&R"), recommending that Plaintiffs'

motion for class certification be granted in part and denied in part. (*See* ECF No. 49.) Plaintiff

timely objected.

### BACKGROUND[1]

Defendant is a specialty tea company headquartered in Fairfield, Connecticut. (Am.

Compl. ¶ 11.) Defendant maintains domestic manufacturing facilities in Fairfield, Connecticut

---

[1] The Court assumes that parties' familiarity with the facts of this case but recites the facts relevant to the issue in
dispute.

Louisville, Kentucky, and Boise, Idaho.  (Decl. of Timothy K. Branson in Supp. of Def. R.C. Bigelow, Inc.'s Opp'n to Mot. for Class Cert. ("Branson Decl."), Ex. A, ECF No. 47-52.)  The tea products at issue in this case undergo a two-stage production process before they are sold to consumers: harvesting and processing.  (Decl. of John McCraw in Supp. of Def. R.C. Bigelow, Inc.'s Opp'n to Pls.' Mot. for Class Cert. ("McCraw Decl.") ¶ 5, ECF No. 47-72.)  Notably, the tea leaves at issue were harvested and processed in China, India, and Sri Lanka.  (*Id*. ¶¶ 4, 5.)  Once processed, Defendant receives the tea and other botanicals from abroad and cleans, sorts, and prepares them ahead of blending, packaging, and selling, all of which occurs in the United States.  (Decl. of Jason B. Kim in Supp. of Pls.' Mot. for Class Cert. ("Kim Decl."), Ex. 2 at Nos. 12–15, ECF No. 47-2.)

The packaging of some of Defendant's tea products contains a label that states, "Manufactured in the USA 100% American Family Owned" (the "Label").  (Am. Compl. ¶¶ 1, 9-10, 13, 31.)  Bigelow has since modified the packaging on the Class Products, replacing the Label at issue in this action with the phrase "Blended and Packaged in the USA 100% American Family Owned."  (*Id.* ¶ 13.)  Before Defendant instituted that change, however, Plaintiffs bought Defendant's tea products bearing the old label.  (Am. Compl. ¶¶ 9–10.)

## STANDARD OF REVIEW

When deciding whether to adopt a report and recommendation, a district court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C).  The Court conducts a de novo review of those portions of a report and recommendation to which a party submits a timely objection.  *Id.*  Where there are no objections to portions of the report, the district court "'need only satisfy itself that

2

there is no clear error on the face of the record.'" *Estate of Ellington ex rel. Ellington v. Harbrew Imports Ltd.*, 812 F. Supp. 2d 186, 189 (E.D.N.Y. 2011) (quoting *Urena v. New York*, 160 F. Supp. 2d 606, 609–10 (S.D.N.Y. 2001)).

## DISCUSSION

To qualify for class certification under Federal Rule of Civil Procedure 23(b)(3), a plaintiff "bears the burden of satisfying the requirements of Rule 23(a)—numerosity, commonality, typicality, and adequacy of representation—as well as Rule 23(b)(3)'s requirements." *In re Petrobras Sec.*, 862 F.3d 250, 260 (2d Cir. 2017). "The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623 (1997). "Predominance is satisfied 'if resolution of some of the legal or factual questions that qualify each class member's case as a genuine controversy can be achieved through generalized proof, and if these particular issues are more substantial than the issues subject only to individualized proof.'" *Roach v. T.L. Cannon Corp.*, 778 F.3d 401, 405 (2d Cir. 2015). The application of this test "begins, of course, with the elements of the underlying cause of action." *Erica P. John Fund, Inc. v. Halliburton Co.*, 563 U.S. 804, 809 (2011). In the Second Circuit, plaintiffs must also demonstrate that the class is ascertainable, meaning that members of a proposed class are "readily identifiable." *In re Petrobras*, 862 F.3d at 264.

Magistrate Judge Locke found each of the Rule 23(a) and (b)(3) requirements and the Second Circuit's ascertainability requirement satisfied as to Plaintiffs' N.Y. Gen. Bus. Law §§ 349 and 350 claims and recommended that the Court certify these claims. (R&R at 12–25, 31–33.) The parties do not object to Judge Locke's conclusions on this claim and, upon review, the

Court finds no clear error with that aspect of the R&R.  As to Plaintiffs' express warranty, common law fraud, and misrepresentation claims, however, Judge Locke recommended that class certification be denied.  (*Id.* at 25–30, 32–33.)  Unlike the GBL claims, Judge Locke reasoned, Plaintiffs' remaining claims each require them to prove the element of reliance, which Judge Locke determined to be an individualized inquiry that would predominate over the common questions.  (*Id.*)  This latter finding is the subject of Plaintiffs' objection.  (Pls.' Obj. to R&R ("Pls.' Obj.") at 1, ECF No. 50.)  Plaintiffs maintain that reliance "can and should be inferred" class wide "because there is common and uniform exposure to the [Label] . . . and there is evidence that Bigelow intended consumer reliance."  (*Id.*)  The Court is unpersuaded.

Although claims for breach of express warranty under the UCC, common law fraud, and intentional misrepresentation are distinct causes of action, they share one element in common. Plaintiffs asserting these claims must prove that they relied on a statement made by the defendant.  Indeed, New York express warranty claims require a "buyer's reliance on [a] warranty as a basis for the contract with his immediate seller[.]"  *Avola v. Louisiana-Pac. Corp.*, 991 F. Supp. 2d 381, 391 (E.D.N.Y. 2013).  Fraud claims in New York likewise demand proof of reasonable reliance on a misrepresentation of a material fact.  *Wynn v. AC Rochester*, 273 F.3d 153, 156 (2d Cir. 2001).  And intentional misrepresentation claims similarly involve a plaintiff's "justifiable reliance" on a "misrepresentation or material omission of fact."  *Lama Holding Co. v. Smith Barney*, 88 N.Y.2d 413, 421(1996).  Consequently, a class asserting these claims may not be certified unless the element of reliance may be demonstrated through general proof.

Under New York law, "a buyer may enforce an express warranty even if it had reason to know that the warranted facts were untrue" if that plaintiff can "show that it believed that it was

4

purchasing seller's promise regarding the truth of the warranted facts." *Merrill Lynch & Co. Inc. v. Allegheny Energy, Inc.,* 500 F.3d 171, 186 (2d Cir. 2007). However, "when 'a buyer closes on a contract in the full knowledge and acceptance of facts disclosed by the seller which would constitute a breach of warranty under the terms of the contract, the buyer should be foreclosed from later asserting the breach.'" *In re Scotts EZ Seed Litig.*, 304 F.R.D. 397, 411 (S.D.N.Y. 2015) (quoting *Galli v. Metz,* 973 F.2d 145, 151 (2d Cir.1992)). This is an individualized inquiry, which has led many courts to hold consider express warranty claims not amenable to the generalized proof necessary to certify a class. *See, e.g.*, *In re Scotts EZ Seed Litig.*, 304 F.R.D. at 411 (declining to certify a class claiming breach of express warranty and common law warranty under New York law because "each buyer's knowledge of the truth or falsity of [the product's] advertising claims require evaluation"); *Weiner v. Snapple Beverage Corp.,* No. 07 Civ. 8742, 2010 WL 3119452, at *11 (S.D.N.Y. Aug. 5, 2010) (declining to certify a class as to New York express warranty claim because "reliance on Snapple's 'All-Natural' label cannot be the subject of generalized proof"); *Klein v. Robert's Am. Gourmet Food, Inc.,* 28 A.D.3d 63, 72–73 (N.Y. 2d Dep't 2006) (reversing lower court's decision that common questions predominated with respect to reliance in a New York express warranty claim).

Similarly, the Second Circuit has opined that "a fraud case may be unsuited for treatment as a class action if there was material variation in the representations made or in the kinds or degrees of reliance by the persons to whom they were addressed." *Moore v. PaineWebber, Inc.,* 306 F.3d 1247, 1252 (2d Cir. 2002) (citation omitted). *McLaughlin v. Am. Tobacco Co.* is instructive here. 522 F.3d 215 (2d Cir. 2008), *abrogated on other grounds by Bridge v. Phx. Bond & Indem. Co.*, 553 U.S. 639 (2008). In *McLaughlin*, plaintiffs sought to certify a class of

smokers allegedly deceived by the defendants' marketing and branding that "light" cigarettes were healthier than "full-flavored" cigarettes. *Id.* at 220. The Second Circuit rejected certification because "[i]ndividualized proof is needed to overcome the possibility that a member of the purported class purchased Lights for some reason other than the belief that Lights were a healthier alternative-for example, if a Lights smoker was unaware of that representation, preferred the taste of Lights, or chose Lights as an expression of personal style." *Id.* at 223. Thus, even where there is no "material variation in the representations made . . . reliance on [a] misrepresentation, cannot be the subject of general proof." *Id.* Claims for intentional misrepresentation similarly require individualized proof. *Marotto v. Kellogg Co.*, 415 F. Supp. 3d 476, 482 (S.D.N.Y. 2019) (holding that claims for fraud, misrepresentation, or breach of express warranty require individualized inquiries that predominate over common questions).

In this case, Plaintiffs cannot escape that individualized questions predominate over each of their claims. Plaintiffs allege that, in purchasing Defendant's tea, they relied on the Label's representation that the tea was manufactured in the United States. (Am. Compl. ¶¶ 10, 53, 64, 73.) "Individualized inquiries would therefore be required to determine whether putative class members purchased" Defendant's tea products "in reliance upon" the Label, "as opposed to other considerations." *Weiner*, 2010 WL 3119452, at *11. That is, Plaintiffs cannot overcome the possibility that class members may have purchased Defendant's tea products for reasons such as the taste of the tea, product price point, or practicability of the packaging. *See, e.g., id.*, 2010 WL 3119452, at *11 (opining that it may be that consumers bought Snapple for its "taste, glass bottles, quirky advertising," etc.); *Crab House of Douglaston Inc. v. Newsday*, Inc., No. 04 CV 558 DRH WDW, 2013 WL 1338894, at *14 (E.D.N.Y. Mar. 29, 2013) ("Because plaintiffs seek

6

to certify a class in a fraud-based action in which neither the purported misrepresentation nor the advertiser's reliance is amenable to generalized proof, common questions do not predominate over questions affecting only individual[s]. . . ."); *Tropical Sails Corp. v. Yext, Inc.*, No. 14 Civ. 7582, 2017 WL 1048086, at *13 (E.D.N.Y. Mar. 17, 2017) (holding that "class certification would be inappropriate for [the plaintiff's] common law fraud claim" because the plaintiff could not "show reliance—a core element of common law fraud in any jurisdiction—by common proof").

        Resisting this conclusion, Plaintiffs cite a handful of cases where a class was certified upon a demonstration of reliance through common evidence.  (Pls.' Obj. at 3-4.)  Each of Plaintiffs' cited authorities, however, is easily distinguishable from the instant action.  In those cases, the alleged misrepresentations supported a reasonable inference of reliance by consumers because they were found to be sufficiently fundamental to the product or service.  For example, in *In re U.S. Foodservice*, the Second Circuit affirmed the certification of a class asserting RICO violations because "while each plaintiff must prove reliance, he or she may do so through common evidence (that is, through legitimate inferences based on the nature of the alleged misrepresentations at issue)."  729 F.3d 108, 120 (2d Cir. 2013).  But the Court reached that conclusion based on claims of "fraudulent overbilling, [where] payment may constitute circumstantial proof of reliance based on the reasonable inference that customers who pay the amount specified in an inflated invoice would not have done so absent reliance upon the invoice's implicit representation that the invoiced amount was honestly owed."  *Id.*  Fraud claims based on financial transactions "do[] not usually implicate the same type or degree of personal

idiosyncratic choice as does a consumer purchase" at issue here. *McLaughlin*, 522 F.3d at 225 n.7.[2]

In this case, by contrast, the choice to purchase a particular tea is necessarily idiosyncratic. "Common sense dictates that a purchaser who does not care" where the tea was made "and instead is only interested in, *e.g.*, taste, cannot make out a claim for fraud, misrepresentation, or breach of express warranty." *Marotto*, 415 F. Supp. 3d at 482. Accordingly, Plaintiffs have not met their burden to show that their fraud, misrepresentation, and breach of express warranty claims are amenable to class certification under the standard set forth in Rule 23(b)(3) because the element of reliance, as a general matter, is not subject to generalized proof.

---

[2] *See also Rodriguez v. It's Just Lunch Int'l*, 300 F.R.D. 125, 139–40 (S.D.N.Y. 2014) (finding plaintiffs' reliance on representation by a dating service about finding "multiple matches" a common question because it's "hard to imagine a reasonable consumer" seeking out a dating service not being swayed by one "touting its supposed matches"); *Seekamp v. It's Huge, Inc.*, 2012 WL 860364, at *4 (N.D.N.Y. Mar. 13, 2012) (determining that reliance on the alleged legality of illegal anti-theft security discounts offered by car dealerships to car purchasers was a common question because "every plaintiff would have relied on the implicit representation of [its] legality and beneficialness in deciding whether to purchase it"); *Ebin v. Kangadis Food, Inc.*, 297 F.R.D. 561, 569 (S.D.N.Y. 2014) (holding that generalized proof that each purchaser of pomace oil falsely advertised as "100% Pure Olive Oil" could support reliance element); *Ge Dandong v. Pinnacle Performance Ltd.*, 2013 WL 5658790, at *10 (S.D.N.Y. Oct. 17, 2013) (holding that the credit-linked notes at-issue "were not the type of product that individuals purchase for any number of reasons; they were financial investments that Plaintiffs made in hopes that they would prove profitable").

**CONCLUSION**

For the foregoing reasons, the R&R is ADOPTED.  Plaintiffs' motion for class certification is GRANTED in part and DENIED in part.


SO ORDERED.

Dated: Brooklyn, New York                    /s/ LDH_____
      March 31, 2025                            LASHANN DEARCY HALL
                                       United States District Judge